UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID D. HENWOOD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNISOURCE WORLDWIDE, INC. )<br>)<br>and )<br>)<br>GEORGIA-PACIFIC CORPORATION, )<br>)<br>Defendants. ) | Civil Action No.<br>3:01CV996(AWT) (DFM)<br><br><br><br>June 1, 2004 |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Unisource Worldwide, Inc. ("Unisource") and Georgia-Pacific Corporation ("Georgia-Pacific") (collectively "Defendants") submit this brief in support of their Motion for Summary Judgment on Plaintiff's claim of promissory estoppel.

**I.   Introduction**

On November 17, 2003, Defendants filed for summary judgment on each of the claims asserted by Plaintiff David Henwood ("Plaintiff" or "Henwood") in his Amended Complaint. On January 21, 2004, Henwood sought leave of this Court to add a claim of promissory estoppel to his Amended Complaint. On March 15, 2004, this Court granted Henwood's motion. The Court subsequently granted Defendants until June 1, 2004, to file a motion for summary judgment on Henwood's promissory estoppel claim. Defendants' initial motion for summary judgment has been fully briefed. Defendants now file for summary judgment on the promissory

estoppel claim Henwood was allowed to add to his Amended Complaint. Like Henwood's other claims, his claim for promissory estoppel fails as a matter of law.

## II. Factual Background

Defendants incorporate the statement of facts contained in their Local Rule 56(a)1 Statement and in their Brief in Support of Defendants' Motion for Summary Judgment, both filed with this Court on November 17, 2003. Defendants now add the following undisputed facts in support of their motion for summary judgment on Plaintiff's promissory estoppel claim.

Henwood was a sales representative in the paper business prior to beginning his employment with PCUS. (Henwood Dep. Tr. 31-33.) During the early 1980's, Henwood worked for A.T. Clayton, a paper merchant, pursuant to a written employment contract. (Henwood Aff. ¶ 4; Henwood 5/18/04 Dep. Tr. 6.[1]) This contract set forth the percentage commission Henwood would earn on the gross margin he generated, the benefits he would receive, and also stated that he would "continue to receive full support from the company for the accounts that were [his]" and "that the company would strive to assist [him] in every way possible to enhance and grow the accounts that he brought with him or gained during [his] employment." (Henwood 5/18/04 Dep. Tr. 7.)

Eventually, Henwood began to suspect that A.T. Clayton was not paying him his full commissions. Soon after, Henwood began seeking other employment. Through a headhunter, Henwood contacted other potential employers, including PCUS, Gould Paper Company, and

---

[1] Defendants briefly reopened Henwood's deposition on May 18, 2004, for the limited purpose of conducting discovery on his promissory estoppel claim. The transcript of that deposition is cited herein as "Henwood 5/18/04 Dep. Tr. __" and the cited pages are attached hereto as Exhibit A. All other cites are to exhibits that were attached to Defendants' initial Motion for Summary Judgment, with the exception of the Henwood Affidavit, which he submitted on January 8, 2004 in support of his opposition to summary judgment.

2

Clifford Paper Company. (Id. at 9). At that time, in late 1984/early 1985, Robert Fitzgerald was the President of PCUS.[2] Henwood did not know Fitzgerald prior to speaking with him about possible employment with PCUS. (Id.). Henwood alleges that Fitzgerald was very interested in having Henwood work for PCUS and bring the Watchtower account with him. (Id. at 10). Though there was no contract between Watchtower and Henwood, and nothing binding Watchtower to work with Henwood for any length of time, Henwood was "certain" that Watchtower would follow him to PCUS. (Id. at 14-15, 18, 20, 22, 24, 26).

According to Henwood, in his pre-employment discussions with PCUS, which occurred almost twenty years ago, Fitzgerald said that (1) he would be "straightforward" with Henwood in "his dealings . . . regarding commission payments"; (2) "he would support [Henwood's efforts to build a substantial customer base] in every possible way"; and (3) PCUS would not interfere with Henwood's relationship with the Watchtower account. (Id. at 10-12, 17-18, 26-28). In this latter regard, Henwood asserts that Fitzgerald told Henwood he would handle the Watchtower account as long as he was with PCUS, unless Henwood did "something overt that would have fractured the relationship [with Watchtower]." (Id. at 27-29). These are the alleged promises on which Henwood bases his promissory estoppel claim. (Amended Compl. ¶ 59). Henwood acknowledges that Fitzgerald never made any statement to the effect that Henwood would service the Watchtower account even if Watchtower said it would not work with Henwood, or if Henwood did something to lose Watchtower's trust. (Id. at 28-29). In fact, Henwood admits this latter situation was not discussed because it is "common sense" that he would not continue working the account if it happened. (Id. at 29).

---

[2] Fitzgerald retired from PCUS (and Unisource) in the early 1990s, long before Georgia-Pacific acquired Unisource.

Ultimately, Henwood resigned from employment with A.T. Clayton and sued A.T. Clayton for breach of contract. (Henwood Aff. ¶¶ 4, 5.) Henwood accepted employment as a sales representative with PCUS in February 1985. (Am. Complaint ¶ 13; Henwood Dep. Tr. 11-13, 52 & Exh. 1.) Henwood says he accepted this employment because PCUS "had been in business a very long time and had a very fine reputation and had access to most of the paper mills in the country." (Henwood 5/18/04 Dep. Tr. 31-32). When asked in his deposition whether he would have accepted employment with PCUS had Fitzgerald not made the statements Henwood now alleges were made, Henwood readily acknowledged that he had "no way to answer" the question. (Id. at 33). At the time that Henwood accepted employment with PCUS, he did not have a job offer from either Gould Paper or Clifford Paper, and in fact had not directly communicated with either of them. (Id.).

Henwood received an offer letter (dated February 13, 1985) signed by Robert Fitzgerald, then President of PCUS. (Henwood Dep. Exh. Plf. 1.) This letter provided, in part:

> You will be joining us as a commission salesman working out of our New York office with the express purpose of developing new sales for fine printing papers. . . .
>
> . . . .
>
> When you go on actual commission, you will be compensated at 45% of the gross margin generated and from that margin you will pay your own travel, entertainment and telephone expenses.

(Id.) This letter does not say anything about the Watchtower account. (Id.) Henwood brought the Watchtower account with him to PCUS and continued to service the account until the end of 1999. (Am. Complaint ¶ 17.) During his fifteen years of employment with PCUS, Henwood made significant commissions off of the Watchtower account, including over one million dollars per year for the years 1995-1999. (Henwood Dep. Tr. 121-23 & Exh. 9.) As a result, from 1985-1999, Henwood was the highest paid sales representative for PCUS. (Am. Compl. ¶ 22.)

Henwood did not have any non-competition agreement with PCUS and acknowledges that he could have taken the Watchtower account with him to another employer if he decided to leave PCUS. (Henwood 5/18/04 Dep. Tr. 34-35). However, Henwood never sought other employment while he was with PCUS or Unisource. (Id. at 35).

### III.   Henwood's Promissory Estoppel Claim Fails As a Matter of Law

Under the doctrine of promissory estoppel, a party may maintain a claim for damages based upon a clear and definite promise that induces the party's action or forbearance to the party's detriment, if such action or forbearance is undertaken in reasonable reliance upon the promise. Stewart v. Cendant Mobility Servs. Corp., 267 Conn. 96, 111-113, 837 A.2d 736, 746 (2003); Finley v. Aetna Life & Cas. Co., 202 Conn. 190, 205, 520 A.2d 208, 216 (1987), overruled on other grounds, 225 Conn. 782 (1993). A fundamental element of promissory estoppel is the existence of a clear and definite promise, which a promisor could reasonably have expected to induce reliance. D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217, 221 (1987).

Henwood cannot establish a claim of promissory estoppel for four reasons. First, he is unable to show a clear and definite promise. Second, Henwood cannot show that he relied to his detriment on Defendants' alleged promise nor that his reliance was reasonable. Third, Henwood cannot show that Defendants had a reasonable expectation that Henwood would rely on their alleged statements. Finally, Henwood cannot show that he suffered an injustice that can only be avoided by enforcing the promise, nor can he establish that any alleged promise was not fulfilled.

### A.   There is No Clear or Definite Promise

Henwood bases his promissory estoppel claim on the allegation that Defendants made him a verbal promise they would support his sales efforts and not interfere with Henwood's

relationship with Watchtower. In D'Ulisse-Cupo, the Connecticut Supreme Court found a similar promise to be insufficient to form the basis of a promissory estoppel claim. The plaintiff there alleged that her employer informed her that it would do everything possible to avoid discharging her and that she relied on this promise by not seeking other employment. D'Ulisse-Cupo, 202 Conn. at 215, 520 A.2d at 222. The plaintiff was eventually fired when her employer hired an outside applicant, rather than plaintiff, and also refused to hire her for a substitute teacher's position for which she was qualified. Id. The Connecticut Supreme Court held that the alleged representations were too vague and indefinite and therefore could not form the basis of a promissory estoppel claim. Id. The court stated "that an offer to use best efforts does not, in and of itself, impose contractual liability in the circumstances alleged in this case." Id.

Like the promises in D'Ulisse-Cupo, the alleged promises upon which Henwood now relies are also vague, indefinite and incapable of being enforced. These promises are, at most, an offer for Defendants to use their best efforts to support Henwood in his representation of PCUS with the Watchtower account.[3] As found by the court in D'Ulisse-Cupo, such promises cannot support a promissory estoppel claim.

Furthermore, under Connecticut law a promise that does not contain an undertaking to perform a specific act or provide a specific service cannot impose liability upon the promisor for failing to perform a specific act. Hayes v. Yale-New Haven Hosp., 48 Conn. Super. 311, 343, 844 A.2d 258, 278 (2001) (statements that employer would support displaced employees not sufficiently precise to impose liability for not having provided specific services). At most, Defendants made representations to Henwood concerning their expectations regarding the

---

[3] More realistically here, the sorts of "support" statements alleged by Henwood are nothing more than "puff" statements made by every employer talking to potential new sales representatives.

employment relationship but stopped short of making a clear and definite promise upon which Henwood could have reasonably relied. Barbuto v. William Backus Hosp., No. 105452, 1995 WL 235068, *6 (Conn. Super. April 13, 1995) (promises that employee could have position as long as she wanted it was simply representation of expectations of employment relationship and neither sufficiently promissory nor definite to support a claim of promissory estoppel); Emanuele v. Boccaccio & Susanin, No. 379367, 1992 WL 702923, *2 (Conn. Super. April 10, 1992) (employer's distinct representations to at-will employee that she "had nothing to worry about with respect to her position and that her job was secure as long as she performed her job as she had in the past," not sufficiently promissory or definite to form basis for promissory estoppel claim); Neuharth v. Conn. Institute for the Blind, No.42975, 1991 WL 35616, *2 (Conn. Super. March 8, 1991) (employer's assurance that employee would not be fired is insufficient to form basis for promissory estoppel claim).

  Finally, even if the vague terms "support" and "interfere" carried with them a specific enforceable promise, Defendants did all they could to maintain theirs and Henwood's relationship with Watchtower. While Henwood seems to now be alleging that Defendants somehow guaranteed him an unconditional appointment to the Watchtower account as long as he was with PCUS, his own testimony undercuts such a claim. Even in *Henwood's* version of events, Henwood admits Fitzgerald told him he would lose the Watchtower account if he (Henwood) did "something overt that would have fractured the relationship [with Watchtower]," and Fitzgerald never made any statement that Henwood would service the Watchtower account if Watchtower said it would not work with Henwood, or if Henwood did something to lose Watchtower's trust. (Henwood 5/18/04 Dep. Tr. 27-29). As Defendants have already set forth in their initial summary judgment papers, this is exactly what happened, and ultimately

Watchtower told Defendants that it would not work with Henwood or PCUS. (See Defendants' Initial Brief in Support of Summary Judgment, filed November 17, 2003, [hereafter "Defendants' Initial Brief"] at 4-13).

Once Watchtower lost trust and confidence in Henwood, Defendants were under no obligation to continue to use him on the account, nor could Defendants force Watchtower to continue to allow Henwood to service the account. Initially, Jim O'Toole (President of Websource) continued to work with Watchtower and Fraser Paper, through Websource, in an attempt to salvage the Watchtower-Unisource relationship, with the hopes that one day Watchtower would allow Henwood to return to the account. (See Defendants' Initial Brief at 10-14). Therefore, even if Defendants did "promise" to "support" and "not interfere" with the Watchtower account, they did all they could to fulfill this "promise"; it was Henwood's actions that caused the rift in the Watchtower relationship and caused him to be removed from the account. (See Defendants' Initial Brief at 4-13).

Henwood's claim for promissory estoppel fails for all of these reasons.

**B.   There Was No Reasonable Reliance by Henwood**

Even assuming for purposes of argument that Henwood could establish the existence of a clear and definite promise, he still cannot show that he reasonably relied upon such a promise to his detriment. Henwood claims that he relied to his detriment on Defendants' alleged promise to "support" him and "not interfere" with the Watchtower account by forgoing other employment opportunities that were available to him. (Amended Compl. at ¶ 60). "[P]roof that this forbearance was induced by the promise requires a showing that the promisee *could have* acted." Stewart, 267 Conn. at 113, 837 A.2d at 747 (citations omitted). Here, Henwood testified that at the time he was discussing employment with PCUS (in 1985) he was also pursuing employment

8

opportunities with Gould Paper and Clifford Paper. However, he did not have offers from either company, and in fact had not even had direct communications with either company. (Henwood 5/18/04 Dep. Tr. 33). Therefore, Henwood cannot make the requisite showing of forbearance because he cannot show that he *could have* acted, i.e. that he could have obtained employment at one of these two companies. More fundamentally, when directly questioned about why he accepted employment with PCUS, Henwood said he did so because of PCUS' reputation and its access to most paper mills -- Henwood did not attribute his acceptance to the promises allegedly made by Fitzgerald, and in fact he readily acknowledged he had "no way to answer" the question of whether he would have accepted employment with PCUS had Fitzgerald not made the alleged statements. (Henwood 5/18/04 Dep. Tr. 31-33).

Henwood also claims that he relied upon the alleged promises of Fitzgerald later in his employment with PCUS because he could have sought other employment and taken the Watchtower account with him. (Amended Compl. ¶¶ 60-61). This allegation completely supports *Defendants'* summary judgment arguments -- the undisputed evidence shows that Henwood, and ultimately Defendants, lost the Watchtower account because of *Henwood's* conduct and Watchtower's loss of trust in Henwood. (See Defendants' Initial Brief at 4-13). Because of that fact, and because Watchtower made clear that it would not work with Henwood, he was not able to go elsewhere and take the Watchtower account with him. If Henwood's version of events was correct -- in which he takes no accountability for the loss of the account -- then there would have been nothing preventing him from going to another employer and taking the account. That was not the reality, however. The reality was that Defendants supported Henwood in every way possible, but he -- and Defendants -- lost the Watchtower account because Henwood would not provide a response to repeated questions from Watchtower. (Id.)

9

In this regard, Henwood also cannot show that his alleged reliance was detrimental. In fact, Henwood profited greatly from the fact that he joined PCUS, earning millions of dollars throughout his 15 years of employment with PCUS and Unisource.

Finally, even had Henwood relied on this alleged promise to his detriment, he cannot show that such reliance was reasonable. As noted above, Henwood now seems to be alleging in his Amended Complaint that PCUS promised him "absolute immunity" in representing PCUS on the Watchtower account. His own testimony shows both that this was not the case and that "common sense" dictated he would lose the account if he did something that caused Watchtower to lose trust in him (Henwood 5/18/04 Dep. Tr. 28-29), which is exactly what happened.

In addition, in light of Henwood's previous experience with A.T. Clayton, it was not reasonable for Henwood to assume that as a commissioned salesman he was entitled to something more than that which was clearly expressed by his employer. In fact, Henwood testified that his employment with A.T. Clayton made him more "knowledgeable" and "better informed" of employers. (Henwood 5/18/04 Dep. Tr. 59-60.) Yet despite this heightened knowledge, Henwood never secured or even asked for a written document setting forth the alleged "support" and "no interference" promises that he now claims were essential to his employment with PCUS. Reliance on a vague and indefinite oral statement is not subjectively reasonable, particularly given Henwood's previous experience with A.T. Clayton.

C.  **Defendants had no Reasonable Expectation of Henwood's Reliance**

"[A] promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." D'Ulisse-Cupo, 202 Conn. at 213, 520 A.2d at 221. Here, for the reasons already stated, Henwood cannot show that Defendants should have reasonably expected Henwood to rely on the alleged promises. General

10

assertions of employer "support" are not reasonably expected to be relied upon as a promise for absolute discretion in handling an employer's business. Nor are they reasonably interpreted to mean guaranteed employment despite poor performance. In fact, Henwood admits that he did not expect Defendants to continue to support him if his relationship with Watchtower soured. (Henwood 5/18/04 Dep. Tr. 28.)

Furthermore, Defendants' statements were made, if at all, during "the process of negotiating" and therefore do not form an objectively reasonable basis on which Henwood could have relied. Plaza Realty Inc. v. Peterson, No. 370888, 1990 WL 284357, *1 (Conn. Super. May 8, 1990) (statements made "in the process of negotiating" are at most part of an incomplete bargain and cannot form the basis of a claim of promissory estoppel).

D.   **Henwood Did Not Suffer an Injustice**

Finally, Henwood cannot establish that injustice can only be avoided by enforcing the alleged promise. In fact, Henwood has not even alleged that injustice can only be avoided by enforcing Defendants' alleged promise. Failure to do so warrants dismissal of the claim. Barbuto v. William Backus Hosp., No. 105452, 1995 WL 235068, *6 (Conn. Super. April 13, 1995).

In any event, Henwood cannot show that he suffered an injustice in relying on Defendants' alleged promise. Henwood enjoyed over 15 years of employment with PCUS and Unisource and earned well in the six and seven figures per year (including over one million dollars per year from 1995-99). Such a long term of employment at an extremely high level of earnings can hardly be characterized as an injustice. Furthermore, any misfortune Henwood suffered was a result of his own actions with the Watchtower account. Henwood's behavior resulted in not only his loss of the Watchtower account but Defendants' loss as well, a loss that

11

was significant to Defendants. (Henwood 5/18/04 Dep. Tr. 40). Moreover, as already described, Defendants fulfilled any alleged promises made to Henwood. Such behavior refutes any contention of Henwood having suffered an injustice or that injustice only being avoided by enforcement of the alleged promises.

## IV.    Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor and dismiss Henwood's promissory estoppel claim.

Submitted this 1st day of June, 2004.

THE DEFENDANTS,
UNISOURCE WORLDWIDE, INC. and
GEORGIA-PACIFIC CORP.

By _____
Wendi J. Kemp (ct 1185)
McCARTER & ENGLISH
CityPlace I
185 Asylum Street, 36th Floor
Hartford, CT 06103-3495
(860) 275-6700

C. Randolph Sullivan (ct 22795)
Kimberlee W. DeWitt (ct23825)
HUNTON & WILLIAMS
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent by overnight mail, postage prepaid, to the following counsel of record on this 1st day of June, 2004:

> Daniel M. Young
> WOFSEY, ROSEN, KWESKIN &KURIANSKY, LLP
> 600 Summer Street
> Stamford, CT 06901-1490

_____
Wendi J. Kemp

HARTFORD: 616091.01