UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID D. HENWOOD, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. |
| UNISOURCE WORLDWIDE, INC. | ) ) | 3:01CV996(AWT) (DFM) |
| and | ) ) | |
| GEORGIA-PACIFIC CORPORATION, | ) ) | |
| Defendants. | ) | July 26, 2004 |

**DEFENDANTS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM**

In his response to Defendants' Motion for Summary Judgment on his promissory estoppel claim, Henwood once again merely relies on his own unsupported theory as to why Watchtower severed its relationship with Henwood and PCUS in an attempt to avoid summary judgment. Henwood restates arguments and makes the same assertions that Defendants "sabotaged" his account with Watchtower and went "behind his back" -- all premised on his own beliefs and speculation, not record evidence -- that he made in response to Defendants' initial summary judgment motion on all of his other claims. And, again, it is clear that Henwood cannot survive summary judgment.

Henwood's promissory estoppel claim, like all of his other claims, is based on his wild speculation that Defendants -- 15 years after Henwood joined PCUS -- somehow deliberately "sabotaged" the Watchtower account, a multi-million dollar account, such that both Henwood and Defendants lost the account. Premised on this "theory," Henwood asserts that Defendants breached promises to "support" him with the account and not to "interfere" with his relationship with Watchtower that were allegedly made to him 15 years earlier in 1985. Henwood's "theory" makes no sense. More importantly, as Defendants already detailed in their initial summary judgment papers, it is completely unsupported by record evidence. As Defendants have described, a simple reading of the deposition testimony of Wayne Rittenbach, who was responsible for the Watchtower purchasing operation in the U.S., and Jim O'Toole, then the President of Websource, shows that Rittenbach lost trust and confidence in Henwood because of <u>Henwood's</u> actions with the account and unequivocally told Defendants that Watchtower would not work with Henwood or PCUS. (See, e.g., Defendants' initial summary judgment brief, dated November 17, 2003, at 6-13). That is why Henwood "lost" the account. Henwood has not offered, and cannot offer, any record evidence to dispute these straightforward facts. In an attempt to disguise this shortcoming which is fatal to his promissory estoppel claim (and all of his other claims), Henwood goes on for pages in his brief -- without cites to any first-hand evidence or testimony and often without any cites to the record at all -- theorizing that Defendants did not support him, undercut his relationship with Watchtower, and the

like. Defendants have already addressed these arguments by Henwood in their earlier summary judgment papers and in their memorandum in support of summary judgment on Henwood's promissory estoppel claim (Defendants' "Initial Brief"). As such, Defendants will not try to address here all of the arguments raised by Henwood in his opposition brief, but rather refer the Court back to their Initial Brief (dated June 1, 2004) to support the conclusion that Henwood's promissory estoppel claim must be dismissed. However, Defendants will address the following points solely to highlight a few of the areas where Henwood has attempted to divert the Court's focus from the record evidence.

I.    **HENWOOD'S VERSION OF EVENTS IS NOT BASED ON ANY FIRST-HAND EVIDENCE AND CANNOT SURVIVE SUMMARY JUDGMENT**

As noted, the underlying theme of Henwood's opposition is that he played no role whatsoever in the demise of the Watchtower relationship. Refusing to put aside ego or to take any accountability, Henwood ignores the undisputed testimony of those who have first-hand knowledge of the reasons why Watchtower severed its relationship with PCUS.

Obviously, the fact that Henwood chooses to ignore the unrefuted testimony of Wayne Rittenbach and Jim O'Toole does not in any way enable him to avoid the result of that testimony -- summary judgment for Defendants. All of Henwood's theories, beliefs, and assumptions as to why Watchtower ultimately terminated its relationship with Henwood and PCUS are irrelevant -- all of these are based merely on his

3

speculation, not on first-hand knowledge of the decision makers.  It is undisputed that Henwood was not party to any of the meetings, conversations or communications that occurred either internally within Watchtower, the customer, or between Watchtower and Fraser Paper, the supplier, leading up to Watchtower's decision, or the actual conveyance of the decision, to sever its relationship with PCUS.  Nor was Henwood present when Rittenbach conveyed that decision to Unisource management, including Jim O'Toole.  (See, e.g., Defendants' initial summary judgment brief, dated November 17, 2003, at 6-12).  The parties who have first-hand knowledge of the events are Watchtower, who made the decision, and those at Unisource to whom Watchtower conveyed the reasons for its decision, including O'Toole.

Rittenbach and O'Toole unequivocally testified that Watchtower became unsatisfied with Henwood's performance on the account and that Watchtower refused to work any longer with Henwood. (Henwood Dep. Exh. 13; Rittenbach Dep. Tr. 50-59, 73-74, 78-79, 87, 163, 167-173, 191-94; O'Toole Dep. Tr. 45-46, 62, 131.) Rittenbach and O'Toole also testified that Unisource attempted to salvage the broken relationship to no avail and that Watchtower ultimately decided to purchase its paper directly from Fraser. (Rittenbach Dep. Tr. 117, 135-36, 144-45, 175 and Exh. 22; O'Toole Dep. Tr. 48-52, 62-63, 99-100). None of these facts can be disputed by Henwood because his "version" of events is based solely on what he speculates to have happened.

Ironically, Henwood repeatedly states that Defendants have ignored the summary judgment standard. Plaintiff's Brief at 1, 9, 11-12, 16. Quite to the contrary, Defendants have correctly argued that because Henwood's wild theories as to the demise of the Watchtower account are based solely on speculation, they do not create genuine issues of material fact. Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (plaintiff may not rely on speculation or conclusory allegations to avoid summary judgment). The only material facts before the Court are the undisputed facts already presented by Defendants, which are based on evidence from those with first-hand knowledge and which mandate that summary judgment be entered for Defendants.

## II.    HENWOOD CANNOT SHOW A CLEAR AND DEFINITE PROMISE THAT WAS BROKEN

At the heart of Henwood's allegations on his promissory estoppel claim is an alleged promise -- allegedly made in 1985 -- that Henwood alone would be the exclusive representative of PCUS on the Watchtower account and that PCUS would support him in his relationship with Watchtower. Even if this were true, Henwood admits that this "promise" was not absolute. Henwood acknowledges that he would no longer be kept on the account if he did something to fracture PCUS' relationship with Watchtower. (Henwood 5/18/04 Dep. Tr. 27-29). Henwood also admits that no promise was made that Henwood would service the Watchtower account if Watchtower said it would not work with Henwood, or if Henwood did something to lose Watchtower's trust. (Henwood 5/18/04 Dep. Tr. 28-29). In fact, Henwood admits that

this latter situation was not discussed because it is "common sense" that he would not continue working the account if it happened. Id.

Therefore, the alleged "promise," even assuming for purposes of argument that it was actually made and is enforceable, was not broken in the present situation. Watchtower informed Defendants that they were no longer satisfied with Henwood's services and refused to work with him. In this regard, Rittenbach expressly testified that he lost trust in Henwood  (See, e.g., Rittenbach Dep. Tr. 167-72, 192-94). Defendants were under no obligation, nor did they have any power, to keep Henwood on the Watchtower account.

Furthermore, Henwood cannot refute Defendants' argument that he has not alleged the making of a clear and definite promise which is capable of supporting a claim for promissory estoppel. Defendants refer the Court to their Initial Brief for this argument, but again note that Henwood has not offered any basis for countering Defendants' position that the term "support" is vague and not capable of being enforced. Because it fails to provide an express undertaking on Defendants' part to perform a specific act or provide a specific service, the term "support" cannot impose liability upon Defendants for their alleged failure to perform some certain act. Hayes v. Yale-New Haven Hosp., 48 Conn. Super. 311, 343, 844 A.2d 258, 278 (2001) (statements that employer would *support* displaced employees not sufficiently precise to impose liability for not having provided specific services). Therefore, regardless of what subjective meaning Henwood has drawn from the term "support," this term does

not carry with it a <u>definite</u> promise of an affirmative action or inaction that is capable of being enforced.

Finally, Henwood argues that he was entitled to commissions on all the revenues that he generated from his customers. As discussed repeatedly, Henwood was paid commissions on all revenues he generated on the Watchtower account through December 31, 1999, when he was removed from the account. Once Henwood was removed from the account, he stopped generating revenues on the Watchtower account, and he was no longer entitled to such commissions. Henwood has pointed to no evidence that states otherwise and therefore cannot show that this alleged promise was breached.

## III.  HENWOOD CANNOT SHOW DETRIMENTAL RELIANCE

Defendants already addressed in their Initial Brief (dated June 1, 2004) the fact that Henwood did not detrimentally rely on any alleged promises in initially accepting employment with PCUS in 1985.[1] Henwood states in his opposition brief that he relied

---

[1] It is worth noting that Henwood blatantly misstates the record in his opposition brief in discussing the reliance issue. In the May 18, 2004 deposition, Defendants' counsel asked Henwood why he thought PCUS "was a better fit" for him than either Gould Paper or Clifford Paper, other companies with whom he was pursuing employment. (Henwood 5/18/04 Dep. Tr. 31-32). Henwood responded by saying: "[PCUS] had been in business a very long time and had a very fine reputation and had access to most of the paper mills in the country, which I needed as an opportunity to – well, that was the principle -- those were the principle things." (<u>Id.</u> at 32). This testimony is clear as to why Henwood accepted employment with PCUS, and Henwood did not refer at all to any alleged statements made by Fitzgerald. Henwood, in his

(continued...)

on Defendants' promises because later in his employment with PCUS "he could have and would have left PCUS with the account and taken it elsewhere or otherwise taken actions to defend his livelihood." Plaintiff's Brief at 14. Such forbearance is only meaningful if Henwood <u>could</u> have acted. <u>Stewart v. Cendant Mobility Servs. Corp.</u>, 267 Conn. 96, 113, 837 A.2d, 736, 747 ("proof that this forbearance was induced by the promise requires a showing that the promisee could have acted."). Henwood has offered no evidence that he could have taken the Watchtower account elsewhere. To the contrary, Rittenbach specifically testified that Watchtower, as a direct result of Henwood's handling of the account, refused to work with Henwood any longer. Rittenbach Dep. Tr. 191-94. No amount of speculation, theorizing or surmising on the part of Henwood can overcome this <u>undisputed</u> fact. Because Henwood cannot show that he could have acted, i.e. he could have taken the Watchtower account elsewhere, he cannot show that he relied on the alleged promises.

## IV. HENWOOD FAILS TO ALLEGE HOW AN INJUSTICE CAN ONLY BE AVOIDED BY ENFORCING THE ALLEGED PROMISE

Henwood mischaracterizes Defendants' argument by stating that Defendants seek to have the complaint dismissed because Henwood failed to mention the word

---

opposition brief, tries to cast this testimony in a different light, citing the exact same testimony but saying that Henwood "first pursued interviews with PCUS" because of these factors. (Henwood Brief at 16). This is a mischaracterization of the testimony.

"injustice" in the promissory estoppel count of his Amended Complaint. Defendants' argument goes well beyond the bare allegations of his Amended Complaint.[2]

Henwood has failed to allege any facts from which a finder of fact can discern how and why an injustice can only be avoided by enforcing the alleged promise. Henwood admits that he did not suffer an injustice during his first 13 years of employment. Plaintiff's Brief at 18. But what Henwood still fails to allege, or support with probative facts, is how he suffered an injustice at all. The evidence unequivocally shows that Henwood caused the decline of the PCUS-Watchtower relationship. The fact that he was no longer receiving commissions on an account that he destroyed and was no longer servicing is not an injustice; he was not owed or entitled to any commissions on the account. Because Henwood cannot come up with any plausible scenario (based on the actual facts of this case and not just his wild speculation) that could allow a jury to find that he suffered an injustice at the hands of Defendants, he has failed to allege an essential element of his promissory estoppel claim. Barbuto v. William Backus Hosp., No. 105452, 1995 WL 235068, *6 (Conn. Super. April 13, 1995) (failure to allege that injustice can only be avoided by enforcing promise mandates dismissal of promissory estoppel claim).

---

[2] Defendants do not oppose Henwood's motion for leave to amend his Amended Complaint dated July 1, 2004, to the extent that he only seeks to add the new paragraph 63 reflected in the new Amended Complaint attached to the motion.

## V.    CONCLUSION

WHEREFORE, for the reasons discussed in this and their preceding briefs in support of their motion for summary judgment, Defendants respectfully request that this Court grant its Motion for Summary Judgment on Henwood's promissory estoppel claim.

THE DEFENDANTS,
UNISOURCE WORLDWIDE, INC. and
GEORGIA-PACIFIC CORP.

By _____

Wendi J. Kemp (ct11185)
McCARTER & ENGLISH
CityPlace I, 185 Asylum Street, 36th Floor
Hartford, CT 06103-3495
(860) 275-6700

C. Randolph Sullivan (ct22795)
Kimberlee W. DeWitt (ct23825)
HUNTON & WILLIAMS
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing was sent by fax and U.S. Mail,

postage prepaid, to the following counsel of record on this 26th day of July, 2004:

> Daniel M. Young, Esq.
> WOFSEY, ROSEN, KWESKIN &KURIANSKY, LLP
> 600 Summer Street
> Stamford, CT 06901-1490

_____
Wendi J. Kemp

HARTFORD: 619711.01

11