UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------

DAVID D. HENWOOD,                         :

       Plaintiff,                         :

                             Civil Action No.
       v.                                 :     3:01 CV 996 (AWT) (DFM)

UNISOURCE WORLDWIDE, INC. and             :
GEORGIA-PACIFIC CORP.

       Defendants.                        :     August 9, 2004

---------------------------------------------------------

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ERRATA SHEET

The Defendants ask this Court for the extraordinary remedy of striking the Plaintiff's errata sheet. In so doing, the Defendants fail to acknowledge to the Court facts relevant to this issue and to controlling law adverse to their position. Such advocacy is unacceptable in this District.

## BACKGROUND

On December 23, 2003, the Connecticut Supreme Court issued the decision of Stewart v. Cendant Mobility Services Corp., 267 Conn. 96 (2003), significantly expanding the scope of the doctrine of promissory estoppel. In response, in his January 8, 2003 opposition to Defendants' pending motion for summary judgment, the Plaintiff announced an intention to amend his complaint to plead explicitly a claim for promissory estoppel. Thereafter, the Plaintiff formally moved to amend his complaint on January 21, 2004.

In opposing Plaintiff's motion for leave to amend his complaint, the Defendants argued repeatedly that such an amendment of the complaint would necessitate additional, burdensome

discovery. After the Court permitted the amendment on March 15, 2004, however, the

Defendants expressed uncertainty as to whether they actually would pursue any new discovery.

Both by telephone and by e-mail, the Defendants indicated that they were "doing an analysis to

see if we need to seek leave to do any additional discovery in light of the court's ruling on the

promissory estoppel claim," despite their prior representations to the Court that discovery would

be required if an amendment were permitted. See, e.g., E-mail from Randy Sullivan to Daniel

Young, dated March 23, 2004, attached hereto as Exhibit A ("Speaking of discovery, I am doing

an analysis to see if we need to seek leave to do any additional discovery in light of the court's

ruling on your promissory estoppel claim. I obviously will talk with you on that issue as well.").

  The Plaintiff consented to the reopening of discovery, and the Defendants eventually

scheduled another deposition of the Plaintiff for May 18, 2004. (The Defendants had deposed

the Plaintiff previously on May 29, 2002 and September 25, 2002.) The Defendants initially

communicated, however, that the date was tentative because they still had not yet determined

whether such a deposition would be necessary. The Defendants never communicated any

intention of pursuing any discovery other than a very limited deposition of the Plaintiff, which

they always maintained, if necessary, would take no more than two hours.

  Although the Plaintiff requested that the Defendants pursue his deposition immediately,

so as to avoid further delay in the briefing of the Defendants' summary judgment motion, and

although the Court granted the Plaintiff leave to amend his complaint on March 15, 2004, the

Defendants delayed two months, until May 18, 2004, before deposing the Plaintiff. The

Defendants then filed their supplemental motion for summary judgment on June 1, 2004.

  The deposition transcript for the Plaintiff's continued deposition arrived at Plaintiff's

counsel's office on May 26, 2004. The Plaintiff thereafter reviewed the transcript, made

changes, and prepared an errata sheet, that was faxed and mailed to defense counsel on June 22,

2004, well within the thirty day time frame provided by Rule 30(e) of the Federal Rules of Civil

Procedure. Upon subsequent review of the errata sheet, the Plaintiff discovered a few errors,[1]

and he prepared an amended errata sheet, a copy of which is attached hereto as Exhibit B. Both

errata sheets were served by fax and regular mail upon defense counsel, and neither was sent

directly to the court reporter.

ARGUMENT

1.    The Errata Sheet was Delivered Directly to Defendants' Counsel.

Although Rule 30(e) of the Federal Rules of Civil Procedure directs that the "officer shall

indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and,

if so, shall append any changes made by the deponent during the period allowed," it does not

specifically provide that the errata sheet must be delivered to the court reporter and not to

opposing counsel. Regardless, the Defendants cite no authority for the proposition that a timely

errata sheet, that is delivered to opposing counsel instead of to the court reporter, should be

stricken. Similarly, the Defendants assert no prejudice that they have suffered by receiving the

errata sheet within the 30-day time period provided by Rule 30(e) and in advance of the time they

---

[1] In addition to amending the errata sheet to correct a few spelling errors, the Plaintiff also corrected his prior revision to page 5 of his transcript. In the original errata sheet, the Plaintiff inadvertently corrected defense counsel's question instead of his answer. The Defendants do not challenge the timeliness of the revised errata sheet, which corrected very minor errors, although they do seek to embarrass the Plaintiff by quoting with "sic" references spelling errors contained in the original errata sheet (see Defendants' Brief, p. 5) that were corrected in the revised errata sheet.

3

would have received it had it been delivered directly to the court reporter.

More disturbingly, however, the Defendants urge this Court to strike an errata sheet because of this alleged technical error when they previously consented to the delivery of the errata sheet directly to counsel with respect to this same deponent. With respect to the errata sheets for the first two days of the Plaintiff's deposition on May 29, 2002 and September 25, 2002, as well as the errata sheet for the two days of defense witness James O'Toole's deposition, counsel agreed to various extensions of time, without alerting the court reporter. Counsel first agreed to the extend the time period for service of the errata sheets until after the parties participated in an upcoming mediation. After the mediation, counsel agreed to exchange errata sheets 30 days later. Thereafter, counsel agreed to two more extensions for the service of these errata sheets, ultimately exchanging errata sheets on December 23, 2002. Set forth at Exhibits C and D are printouts of several e-mails exchanged by counsel between November 4, 2002 and December 20, 2002, confirming the various agreements concerning the exchange of these errata sheets.

By e-mail dated November 4, 2002, defense counsel inquired of the undersigned whether it was necessary to alert the court reporter to the parties' agreement concerning these various extensions. The undersigned and defense counsel ultimately agreed that it would not be necessary to alert the court reporter to the forthcoming revisions and that any errata sheet served on each other "would supercede the standard court reporter letter" indicating that no errata changes were necessary. See Exhibit C, E-mails dated November 4, 2002 at 10:08am, 10:10am, 10:15am and 10:23am. Thereafter, defense counsel confirmed that the parties would exchange errata sheets "by fax, with originals to follow by regular mail," again not involving the court

reporter in these errata sheets. <u>See</u> Exhibit D, E-mail dated December 20, 2002 at 10:51am.

These agreements concerning the service of errata sheets directly upon opposing counsel, without the involvement of the court reporter, were made with respect to the Plaintiff's deposition. Now, with respect to the errata sheet for the third day of this same deposition, the Defendants disavow retroactively their prior agreement and insist that the errata sheet should be stricken because the Plaintiff has followed the same procedure that previously was utilized by <u>both</u> parties in exchanging errata sheets. In having agreed to exchange errata sheets previously in this manner, the Defendants have waived their right to enforce an alleged technical violation or, at the least, should be estopped from making such an argument without providing advance notice to the Plaintiff that they no longer intended to be bound by the prior agreement. Regardless, it is inexcusable that the Defendants have raised this hyper-technical issue with the Court without alerting the Court to the parties' prior agreement concerning this same deposition. Unfortunately, however, such conduct is not surprising, as the Defendants' positions concerning discovery disputes and the pending summary judgment motion similarly have displayed a lack of candor to the Court concerning any facts or law adverse to their position.

II.     <u>The Errata Sheet Does Not Impermissibly Contradict Previous Testimony.</u>

The Defendants argue that the Plaintiff's errata sheet somehow is improper because it amends and alters deposition testimony recently given by the Plaintiff. While the Defendants likely would have preferred to receive the Plaintiff's errata sheet prior to the time when they filed their supplemental motion for summary judgment, they have no one but themselves to blame for the fact that the errata sheet was not in their possession at that time. The Defendants delayed for

5

two months in reopening the deposition of the Plaintiff, and the fact that they waited to take the deposition until less than two weeks remained before their motion was due should not prejudice the Plaintiff's rights under Rule 30(e) to make corrections to his testimony. The Defendants legal arguments, moreover, are unsupportable.

The Defendants first seek to liken the Plaintiff's errata sheet to an affidavit that is submitted in opposition to summary judgment. The Plaintiff does not dispute the established law that a party may not, with respect to a motion for summary judgment, contradict prior deposition testimony with an affidavit in an attempt to create a genuine issue of material fact. See, e.g., Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619-20 (2d Cir. 1996). The instant situation is markedly different, however, because Rule 30(e) expressly provides for a mechanism for correcting recent deposition testimony. The Defendants cannot deprive the Plaintiff of the right to file an errata sheet simply because they delayed until near the last moment before taking the Plaintiff's deposition.

The Defendants' reliance on Innovative Marketing & Technology, LLC v. Norm Thompson Outfitters, Inc., 171 F.R.D. 203 (W.D. Texas 1997), also is wholly misplaced. The Defendants cite this opinion for the proposition that "when an errata sheet [is] filed after summary judgment is filed, courts should apply closer scrutiny and in ruling on summary judgment may disregard changes and consider only original testimony." That opinion, however, is completely devoid of such a holding. In Innovative Marketing, the Court rejected the position advanced by the defendants there, identical to what the Defendants here advocate, that only typographical and non-substantive changes can be made in an errata sheet. The court explained that the Fifth Circuit had not yet addressed this issue, and it elected to follow the holdings of

6

those courts that have interpreted Rule 30(e) as allowing changes in form <u>and substance</u>, as Rule 30(e) explicitly provides.

While blatantly mischaracterizing the holding of a district court opinion from the Fifth Circuit, the Defendants fail to cite controlling Second Circuit authority, which they are ethically compelled to disclose to this Court. <u>See</u> Rules 3.3 of the Rules of Professional Conduct ("A lawyer shall not knowingly ... fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."). Contrary to the Defendants contention that a deposition errata sheet must be stricken because it allegedly contradicts or alters substantively a deponent's testimony, the Court of Appeals for the Second Circuit has held that Rule 30(e) allows deponents to make "changes in form or substance," recognizing that Rule 30(e) places "no limitations on the type of changes that may be made, nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes – even if those reasons are unconvincing." <u>See</u> <u>Podell v. Citicorp Diners Club, Inc.</u>, 112 F.3d 98, 103 (2d Cir. 1997) (<u>quoting</u> <u>Lugtig v. Thomas</u>, 89 F.R.D. 639, 641 (N.D. Ill. 1981)) (internal quotation marks omitted). The controlling law in this Circuit is that, in adjudicating a motion for summary judgment, the Court is obliged to consider both original deposition testimony and any errata sheet. <u>See</u> <u>Podell</u>, 112 F.3d at 103. This is all the Plaintiff seeks to accomplish with his errata sheet.

Moreover, even if Second Circuit law prohibited a party from contradicting his prior testimony in an errata sheet, the Plaintiff has not done so here. Instead, the Plaintiff has sought to clarify his deposition testimony so that the Defendants cannot misquote his testimony again.

7

When asked a hypothetical question about reliance on the Defendants' promises, the Plaintiff answered "I have no way to answer that." <u>See</u> Henwood 5/18/04 p. 33. The Defendants repeatedly cite this testimony in support of their position that the Plaintiff did not rely upon their promises, completely ignoring the fact that the Plaintiff clarified this testimony <u>at the deposition</u> when he later testified that he relied upon Mr. Fitzgerald's promises and "if [he] hadn't been comfortable with the level of support and exclusivity that had been promised by PCUS," he would not have accepted PCUS's offer of employment. <u>See</u> Henwood 5/18/04, p. 62-63. In order to clarify the reason why Mr. Henwood could not answer defense counsel's question, the Plaintiff amended his response in his errata sheet. In doing so, the Plaintiff fulfilled one of the purposes of Rule 30(e) – to correct deposition testimony so there is no confusion about the meaning of his deposition testimony at trial.[2] <u>See</u> <u>Lugtig v. Thomas</u>, <u>supra</u>, 89 F.R.D. at 641 ("Allowing a witness to change his deposition before trial eliminates the likelihood of deviations from the original deposition in his testimony at trial; reducing surprises at the trial through the use of Rule 30(e) is an efficient procedure."). Of course, to the extent the Defendants believe that the Plaintiff has contradicted himself, they are free to cross examine the Plaintiff on this amendment. The Court of Appeals has ruled, however, that such amendments are explicitly authorized by Rule 30(e).

---

[2] The Defendants other asserted examples of the Plaintiff contradicting his prior testimony similarly are instances of the Plaintiff clarifying his prior testimony instead of, as the Defendants claim, contradicting his testimony.

III.    <u>The Errata Sheet Does Not Deny the Defendants the Ability to do Anything.</u>

The Defendants next argue that the Plainitff's errata sheet must be stricken because the Plaintiff has added additional information, in response to defense counsel's questions, that was not contained in his deposition testimony. The Defendants argue that the errata sheet, therefore, "denies [them] the ability to depose Plaintiff on the new information provided." The Defendants cite <u>no</u> support for their argument that such amendments justify striking of an errata sheet, and adoption of the Defendants' position would require this Court to ignore controlling Second Circuit authority discussed above that permits substantive changes and amendments to deposition testimony.

In reviewing his deposition transcript, the Plaintiff realized that he had not included in his answer the full details concerning a conversation that occurred almost twenty years ago. The Plaintiff also amended other answers in order to ensure that his deposition answers were complete. The Defendants assert that these amendments do not help Henwood survive summary judgment, and the Plaintiff does not disagree that his changes should not significantly alter any summary judgment analysis. The Plaintiff was not motivated in drafting his errata sheet by a concern that, without changes, his testimony was insufficient to survive summary judgment. Instead, the Plaintiff amended his errata sheet in order to ensure that his deposition testimony was complete and accurate. While the Defendants are free to cross examine the Plaintiff as to why he recalled additional details and amended his deposition testimony, they offer no support for their contention that such amendments should be stricken.

Finally, the Defendants' protestation that the Plaintiff's amendments have deprived them of the ability to depose the Plaintiff on these "new" details rings hollow. The Defendants have

## CONCLUSION

David Henwood will be 69 years old next month. Many of the questions leading to his errata sheet changes focused on events that took place approximately 20 years ago, when the Defendants hired him. There is no reason, consistent with the interests of justice, why Mr. Henwood should be disqualified from correcting his deposition testimony in the same manner as any other witness – by utilizing the errata sheet before swearing to the accuracy of his recorded testimony.

The Plaintiff properly prepared an errata sheet to his deposition testimony, and the Defendants' unsupportable arguments that it should be stricken should be rejected. Plaintiff leaves to the sound discretion of the Court whether Defendants' conduct in mischaracterizing the factual record and refusing to disclose controlling authority in this Circuit on a motion of this type warrants the imposition of sanctions. Such conduct over the suitability of an *errata sheet* certainly is troubling.

RESPECTFULLY SUBMITTED,

THE PLAINTIFF,
DAVID D. HENWOOD

By _____
    David M. Cohen, Esq. (ct06047)
    Daniel M. Young (ct17188)
    WOFSEY, ROSEN, KWESKIN &
       KURIANSKY, LLP
    600 Summer Street
    Stamford, CT 06902
    (203) 327-2300

11

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent on this 9th day of August, 2004 to

the following counsel of record by U.S. Mail, postage prepaid:

       Wendi J. Kemp, Esq.
       Gregory B. Nokes, Esq.
       McCarter & English, LLP
       CityPlace I
       185 Asylum Street
       Hartford, Connecticut 06103


       C. Randolph Sullivan, Esq.
       Hunton & Williams
       951 East Byrd Street
       Richmond, VA 23219
       (by facsimile also)

                                    Daniel M. Young

# Exhibit A

**Daniel Young**

| | |
|---|---|
| **From:** | Sullivan, Randy [rsullivan@hunton.com] |
| **Sent:** | Tuesday, March 23, 2004 10:20 PM |
| **To:** | Daniel Young |
| **Subject:** | Re: Henwood - financial discovery |

Dan - sorry to be slow responding.  Things are crazy and exciting down here - we had our second child (another boy) two weeks ago.  Aside from sleep deprivation, all are doing well.  Actually, the day you sent your email I came down with some stomach virus and was not paying too much attention to emails.

I am glad you reminded me about the discovery - I had totally forgotten about it and sort of had it in my mind that all was done.  I will follow up with it and let you know.

Speaking of discovery, I am doing an analysis to see if we need to seek leave to do any additional discovery in light of the court's ruling on your promissory estoppel claim.  I obviously will talk with you on that issue as well.

Thanks - hope you are doing well.
--------------------------
Sent from my BlackBerry Wireless Handheld

1

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------

DAVID D. HENWOOD,                              :

      Plaintiff,                          :
                                                              Civil Action No.
     v.                                   :       3:01 CV 996 (AWT) (DFM)


UNISOURCE WORLDWIDE, INC. and                  :
GEORGIA-PACIFIC CORP.

      Defendants.                         :       July 19, 2004

------------------------------------------------------------

**AMENDED ERRATA SHEET FOR TRANSCRIPT OF
CONTINUED DEPOSITION OF DAVID D. HENWOOD
HELD ON MAY 18, 2004**

I, David D. Henwood, in order to make my deposition transcript more accurate, wish to

make the following changes:

| PAGE # | LINE # | CORRECTION | REASON FOR CORRECTION |
|--------|--------|------------|----------------------|
| 4 | 10-11 | replace "My best recollection is it was at his retirement party." with "I believe the last time I spoke with him was when he returned to have lunch with me and other PCUS employees, following his retirement." | to make more accurate |
| 5 | 24 | add to end of answer "The promise about interfering was to not interfere with the Watchtower account or any other account for which I was responsible." | to make more accurate |
| 6 | 12 | replace "breeched" with "breached" | spelling mistake |
| 6 | 24 | replace "breech of contract" with "written contract" | transcription error |
| 10 | 19 | add to end of sentence ", and my relationship with the Watchtower since I had replaced PCUS as the Watchtower's supplier for magazine paper in 1977." | to make more accurate |

| 11 | 24 | add to end of sentence ", including the President and the Chairman of the Board of PCUS's parent company, Alco Standard. In fact, during my discussions with Mr. Fitzgerald prior to my employment, he informed me that Dick Gozon, the President of Alco Standard, intended to meet with me shortly after I would start working for PCUS to discuss the Watchtower account and the entire organization's willingness to assist me and support my efforts in any way possible. Approximately three weeks after I began my employment with PCUS, Mr. Gozon, Mr. Fitzgerald and I met. Mr. Gozon again promised me the company's full support for my efforts with the Watchtower, promising that he and the Chairman of the Board, Ray Mundt, would make themselves available whenever necessary in order to assist me with the Watchtower account. We also discussed during that meeting that Mr. Gozon would exert leverage he could bring, if necessary, in order to ensure Fraser's cooperation with the company. Specifically, he raised the possibility of providing Fraser with other business in order to encourage Fraser to work with PCUS." | to make more accurate |
| 14 | 10 | add to end of sentence "and I wanted to make sure that, if I accepted employment with PCUS, they would never do what A.T. Clayton did." | to make more accurate |
| 14 | 16-17 | replace answer with "Yes, I was confident I could do so." | to make more accurate |
| 15 | 6 | add to end of sentence "and because of my longstanding relationships with key personnel at the Watchtower and because of my skills and knowledge as a salesperson, and my knowledge of the Watchtower's paper needs." | to make more accurate |
| 16 | 11 | add to answer "I also remember discussing with Mr. Fitzgerald my sales history and my several high profile clients, many of whom PCUS also sold paper to. | to make more accurate |

| 17 | 11 | replace answer with "Mr. Fitzgerald was more involved in the Watchtower account than Dan Romanaux, but I always was the person who initiated or responded to any contact between PCUS and the Watchtower. As the company president, Mr. Fitzgerald was actively involved in the Watchtower account by occasionally accompanying me to meetings and otherwise assisting me to maintain this account." | to make more accurate |
|---|---|---|---|
| 18 | 11 | Add "In addition, as I have testified previously and in my affidavit, Mr. Fitzgerald promised that I alone would be the exclusive representative of PCUS to the Watchtower, that the company, including its parent company and high level management, would assist me in maintaining the Watchtower account, and that PCUS would never take actions like those actions taken by A.T. Clayton." | to make more accurate |
| 18 | 24 | add to end of sentence ", although the purchase orders generally involved a year's worth of paper." | to make more accurate |
| 19 | 22 | add after Ralph Lindem "and Calvin Chyke" | to make more accurate |
| 20 | 12 | add to end of answer "We had an oral agreement between PCUS and the Watchtower that we would each provide to the other at least a year's notice if we were not going to be able to work together in the future, because of the significant commitment each organization was making to the other and so that each organization would be able to protect its interests." | to make more accurate |
| 22 | 24 | add after "No" ", no formal agreement, although the Watchtower's direct communications with Fraser were inconsistent with the methods of communication that we had established." | to make more accurate |
| 24 | 10 | add after "No" ", with the exception of purchase orders or the oral agreement to provide each other with at least a year's notice." | to make more accurate |

| 26 | 19 | replace answer with "Not contractually, but practically I could rely upon the Watchtower's business because I knew that as long as I offered the Watchtower superior service and a good product at a cheaper price than it could find elsewhere, it would continue to purchase its paper from me. Although it was often challenging, I was confident in my ability to work with Watchtower and maintain the level of quality of paper that Fraser produced for the Watchtower." | to make more accurate |
|---|---|---|---|
| 26 | 24 | add to end of line "He said I alone could service the Watchtower account for the company, and he provided information about how another salesperson, Dan Romanaux, had been calling on the account, but that he would put a stop to that to ensure that only I would be calling upon the Watchtower or otherwise dealing with them." | to make more accurate |
| 27 | 20 | add to end of line "But otherwise, you and you alone would be responsible to service your accounts." | to make more accurate |
| 28 | 23 | delete "I believe" | to make more accurate |
| 33 | 24 | add to end of sentence "because he made those statements. If he had not made those promises on his own, I would have asked for such assurances, but he made those promises without me even having to ask." | to make more accurate |
| 34 | 9 | add to beginning of answer "Yes," | to make more clear |
| 34 | 15 | add to end of sentence ", I wasn't concerned because I was promised it wouldn't happen." | to make more clear |
| 37 | 20 | add to end of sentence ", but it wasn't clear that I wasn't going to be servicing the account then." | to make more accurate |
| 38 | 12 | add to end of sentence ", but in December 1999, I still hoped they would provide the support they had promised to provide, and I still was endeavoring to have them provide that support." | to make more accurate |

| 38 | 22 | add to end of sentence ", so I relied on Jim's promises and decided to stay at PCUS and try to retain the account based upon Jim's initial promises to involve me in the account and to reinstate me soon." | to make more clear |
|---|---|---|---|
| 41 | 3 | add to end of sentence ", until the end." | to make more accurate |
| 43 | 8 | replace "way of paper" with "weight of paper" | transcription error |
| 45 | 9 | add after the word "recall" "earlier today, in my prior deposition and in my affidavit." | to make more clear |
| 46 | 20 | add "I also relied on the commitments by taking the job with PCUS and by staying there when, if I had known the company intended to stop supporting me, or if the company had not hidden its actions from me, I would have taken the Watchtower account elsewhere." | to make more accurate |
| 50 | 1 | insert after "Yes" ", and our established method of doing business." | to make more accurate |
| 50 | 18 | insert after "knowledge" ", although it apparently did since I now believe there were communications between PCUS and the Watchtower that did not involve me that occurred prior to 1999." | to make more accurate |
| 52 | 4 | add "I would have communicated with the Watchtower about issues they were raising if the company hadn't hidden communications from me." | to make more accurate |
| 56 | 4 | add ", since Jim O'Toole had promised me the account back." | to make more accurate |
| 58 | 9 | replace "in" with "at" | transcription error |
| 60 | 5 | replace "weary" with "wary" and add to end of sentence ", so I made sure I had the necessary assurances from PCUS before accepting the job with it." | transcription error and to make more accurate |
| 62 | 1 | replace "Schiff" with "Chyke" | transcription error |

David D. Henwood

Subscribed and sworn to before me:

Dated this ___19___ day of ___July___

_____
Notary Public / Commissioner of the Superior Court

DEBRA T. CHRISTENSEN
NOTARY PUBLIC
Commonwealth of Massachusetts
My Commission Expires
July 7, 2006

6

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent on this 21st day of July, 2004 to the

following counsel of record by U.S. Mail, postage prepaid:

    Wendi J. Kemp, Esq.
    Gregory B. Nokes, Esq.
    McCarter & English, LLP
    CityPlace I
    185 Asylum Street
    Hartford, Connecticut 06103


    C. Randolph Sullivan, Esq.
    Hunton & Williams
    951 East Byrd Street
    Richmond, VA 23219
    (by facsimile also)

                                Daniel M. Young

# Exhibit C

## Daniel Young

| | |
|---|---|
| **From:** | Sullivan, Randy [rsullivan@hunton.com] |
| **Sent:** | Monday, November 04, 2002 10:23 AM |
| **To:** | Daniel Young |
| **Subject:** | RE: Errata Sheets |

"Correct" was not a good word choice on my part. My experience has been the same as yours re: the transcript and errata sheet being put together. Yes, our errata sheets served within 30 days from today would supercede the standard court reporter letter. I guess my only thought was to avoid having that letter sent out at all, but it really does not matter. It would probably create more confusion on the part of the reporting service if we called and explained that we modified the 30-day period.

Thanks.

-----Original Message-----
**From:** Daniel Young [mailto:dyoung@wrkk.com]
**Sent:** Monday, November 04, 2002 10:15 AM
**To:** Sullivan, Randy
**Subject:** RE: Errata Sheets

I'm not sure what you mean. I've never seen a court reporter correct a transcript based upon an errata, have you? Typically what I see is just the court reporter sending the errata and the deposition out together. If we don't notify the court reporter, I think we'll just get a letter from the court reporter that says that b/c no errata was returned, the deposition transcript is completed. That letter would be superceded by any errata sheets that are served during the time period allowed by our agreement, no?

```
Daniel M. Young, Esq.
Wofsey, Rosen, Kweskin & Kuriansky, LLP
600 Summer Street
Stamford, CT 06901
203-327-2300
203-967-9273 (fax)


        **********************************
```

*This communication and any documents attached or other information transmitted contains confidential information which is intended only for the use of the addressee. It may also contain information that is protected by the Attorney-client privilege or the work product doctrine. Any review, retransmission, dissemination, copying, or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient or distribution of this communication by persons other than the addressee is prohibited. If you have received this communication in error, please delete the*

*material from any computer, and notify the sender immediately by*
*returning the original message to the sender.*

-----Original Message-----
**From:** Sullivan, Randy [mailto:rsullivan@hunton.com]
**Sent:** Monday, November 04, 2002 10:10 AM
**To:** Daniel Young
**Subject:** RE: Errata Sheets

Not really.  My only thought was that the court reporters will often assume after 30 days have passed from the date of their letter to us that there are no changes and will send out the final original.  That's not a big deal (e.g., we can obviously make changes after that based on our agreement) -- just thought it might save the court reporter the trouble of sending the final out and then having to make additional changes.

-----Original Message-----
**From:** Daniel Young [mailto:dyoung@wrkk.com]
**Sent:** Monday, November 04, 2002 10:08 AM
**To:** Sullivan, Randy
**Subject:** RE: Errata Sheets

I have not already alerted the court reporter.  The 30 days from today is fine.  As long as we have an agreement, I doubt we need to involve the court reporter.  Do you disagree?

Daniel M. Young, Esq.
Wofsey, Rosen, Kweskin & Kuriansky, LLP
600 Summer Street
Stamford, CT 06901
203-327-2300
203-967-9273 (fax)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*This communication and any documents attached or other information*
*transmitted contains confidential information which is intended only*
*for the use of the addressee.  It may also contain information that is*

*protected by the Attorney-client privilege or the work product*
*doctrine.  Any review, retransmission, dissemination, copying, or other*
*use of, or taking of any action in reliance upon, this information by*
*persons or entities other than the intended recipient or distribution of*
*this communication by persons other than the addressee is prohibited.*
*If you have received this communication in error, please delete the*
*material from any computer, and notify the sender immediately by*
*returning the original message to the sender.*

-----Original Message-----
**From:** Sullivan, Randy [mailto:rsullivan@hunton.com]
**Sent:** Monday, November 04, 2002 10:03 AM
**To:** Daniel Young
**Subject:** Errata Sheets

Dan --

    Now that the mediation has passed, how do we want to work the errata sheets for David Henwood's and Jim O'Toole's depo transcripts.  Why don't we just start the 30-day period running from today?  (Do we need to alert the court reporter to our agreed stay, or have you already done that?).

    Thanks.

    -----Original Message-----
    **From:** Daniel Young [mailto:dyoung@wrkk.com]
    **Sent:** Friday, November 01, 2002 4:30 PM
    **To:** Sullivan, Randy
    **Subject:** RE: Hearing Before Magistrate Judge Martinez

Unfortunately, I just scheduled a mediation for November 12th.  The opposing party and lawyer are from Florida and only will be up here on that day, so I can't reschedule it.

Hopefully, the 14th will work.  Have a good weekend too.

    - Dan


    **Daniel M. Young, Esq.**
    Wofsey, Rosen, Kweskin & Kuriansky, LLP
    600 Summer Street
    Stamford, CT 06901
    203-327-2300
    203-967-9273 (fax)


    *************************************

*This communication and any documents attached or other information transmitted contains confidential information which is intended only for the use of the addressee.  It may also contain information that is protected by the Attorney-client privilege or the work product doctrine.  Any review, retransmission, dissemination, copying, or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient or*

7/27/2004

distribution of
this communication by persons other than the addressee is
prohibited.
If you have received this communication in error, please
delete the
material from any computer, and notify the sender
immediately by
returning the original message to the sender.

-----Original Message-----
**From:** Sullivan, Randy [mailto:rsullivan@hunton.com]
**Sent:** Friday, November 01, 2002 4:24 PM
**To:** Daniel Young
**Subject:** Hearing Before Magistrate Judge Martinez

Dan --

    I spoke with Judge Martinez's assistant and told her we are still on for November 14 as the mediation was unsuccessful. I mentioned my possible need for rescheduling to an earlier date. She said the Judge is not available on November 13, but does have time on Tuesday, November 12. If necessary, would that date work for you? I should know definitively by Tuesday next week whether I have a conflict on the 14th and will immediately let you know. As of now, we are set for 10:00 a.m. on November 14.

    Thanks -- have a great weekend.

    -----Original Message-----
    **From:** Daniel Young [mailto:dyoung@wrkk.com]
    **Sent:** Wednesday, October 23, 2002 3:22 PM
    **To:** Sullivan, Randy
    **Subject:** RE: Ted O'Hanlan

Either day is fine with me. I don't know if she is hearing just our motions, or if she has only one day a month when she hears discovery motions. Sorry I can't be of more help. Chamber's phone number is 860-240-3605.

```
Daniel M. Young, Esq.
Wofsey, Rosen, Kweskin & Kuriansky, LLP
600 Summer Street
Stamford, CT 06901
203-327-2300
203-967-9273 (fax)
```

                                *************************************

This communication and any documents attached or

*other information
transmitted contains confidential information
which is intended only
for the use of the addressee. It may also contain
information that is
protected by the Attorney-client privilege or the
work product
doctrine. Any review, retransmission,
dissemination, copying, or other
use of, or taking of any action in reliance upon,
this information by
persons or entities other than the intended
recipient or distribution of
this communication by persons other than the
addressee is prohibited.
If you have received this communication in error,
please delete the
material from any computer, and notify the sender
immediately by
returning the original message to the sender.*

-----Original Message-----
**From:** Sullivan, Randy [mailto:rsullivan@hunton.com]
**Sent:** Wednesday, October 23, 2002 3:17 PM
**To:** Daniel Young
**Subject:** RE: Ted O'Hanlan

Dan --

Not that I am jumping ahead of, or overlooking the possible result of, the mediation, but I wanted to raise an issue with you concerning the November 14 hearing date that Magistrate Judge Martinez has set. Obviously, that hearing may be unnecessary. However, I wanted to notify you early on that I have a conflict on the 14th. In your experience with the Court there, is there typically any flexibility with rescheduling by a day or two (e.g, moving it to the 13th or 15th, if those dates work for everyone)?

Thanks.

-----Original Message-----
**From:** Daniel Young [mailto:dyoung@wrkk.com]
**Sent:** Wednesday, October 23, 2002 9:27 AM
**To:** Sullivan, Randy
**Subject:** RE: Ted O'Hanlan

9:00am is fine with Ted.

**Daniel M. Young, Esq.**
Wofsey, Rosen, Kweskin & Kuriansky, LLP

```
600 Summer Street
Stamford, CT 06901
203-327-2300
203-967-9273 (fax)


**************************************

This communication and any documents
attached or other information
transmitted contains confidential
information which is intended only
for the use of the addressee.  It may
also contain information that is
protected by the Attorney-client
privilege or the work product
doctrine.  Any review, retransmission,
dissemination, copying, or other
use of, or taking of any action in
reliance upon, this information by
persons or entities other than the
intended recipient or distribution of
this communication by persons other than
the addressee is prohibited.
If you have received this communication
in error, please delete the
material from any computer, and notify
the sender immediately by
returning the original message to the
sender.
```

-----Original Message-----
**From:** Sullivan, Randy [mailto:rsullivan@hunton.com]
**Sent:** Wednesday, October 23, 2002 9:20 AM
**To:** Daniel Young
**Subject:** RE: Ted O'Hanlan

Dan --

    I don't know if you and Ted have discussed starting time at all on the 30th.  We would prefer to start somewhat early (e.g., 8:30 or 9:00) so that we can get decent flights back that night.  Would that work for you all?  Notice I didn't throw out any 7:00 a.m. suggestions, though that was popular at Jim's deposition.

    Randy

    -----Original Message-----
    **From:** Daniel Young [mailto:dyoung@wrkk.com]
    **Sent:** Tuesday, October 22, 2002 6:09 PM

**To:** Randy Sullivan (E-mail)
**Subject:** FW: Ted O'Hanlan

**Daniel M. Young, Esq.**
Wofsey, Rosen, Kweskin &
Kuriansky, LLP
600 Summer Street
Stamford, CT 06901
203-327-2300
203-967-9273 (fax)

*******************************

*This communication and any
documents attached or other
information
transmitted contains
confidential information which
is intended only
for the use of the addressee.
It may also contain
information that is
protected by the Attorney-
client privilege or the work
product
doctrine.  Any review,
retransmission, dissemination,
copying, or other
use of, or taking of any
action in reliance upon, this
information by
persons or entities other than
the intended recipient or
distribution of
this communication by persons
other than the addressee is
prohibited.
If you have received this
communication in error, please
delete the
material from any computer,
and notify the sender
immediately by
returning the original message
to the sender.*

-----Original Message-----
**From:** O'Hanlan, Edward V. [mailto:tohanlan@rc.com]

# Exhibit D

**Daniel Young**

**From:** Sullivan, Randy [rsullivan@hunton.com]
**Sent:** Friday, December 20, 2002 10:51 AM
**To:** Daniel Young
**Subject:** RE: errata sheets


Dan --

    This will confirm that we have agreed to extend the deadline for all parties for the exchange of errata sheets (for Mr. Henwood's and Mr. O'Toole's depos) until Monday, December 23, and that the parties will exchange the errata sheets on the morning of Monday, December 23 by fax, with originals to follow by regular mail.

    Thank you.  Have a great holiday.

-----Original Message-----
From: Daniel Young [mailto:dyoung@wrkk.com]
Sent: Tuesday, December 17, 2002 6:36 PM
To: Sullivan, Randy
Subject: RE: errata sheets


I just wanted to confirm that the extension until Friday for the errata sheets is for both us and you.


>    Daniel M. Young, Esq.
>    Wofsey, Rosen, Kweskin & Kuriansky, LLP
>    600 Summer Street
>    Stamford, CT 06901
>    203-327-2300
>    203-967-9273 (fax)
>
>
>        *************************************
>
>    This communication and any documents attached or other information
>    transmitted contains confidential information which is intended only
>    for the use of the addressee.  It may also contain information that
is
>    protected by the Attorney-client privilege or the work product
>    doctrine.  Any review, retransmission, dissemination, copying, or
other
>    use of, or taking of any action in reliance upon, this information
by
>    persons or entities other than the intended recipient or
distribution of
>    this communication by persons other than the addressee is
prohibited.
>    If you have received this communication in error, please delete the
>    material from any computer, and notify the sender immediately by
>    returning the original message to the sender.
>


-----Original Message-----
From: Sullivan, Randy [mailto:rsullivan@hunton.com]
Sent: Tuesday, December 17, 2002 2:31 PM
To: Daniel Young
Subject: RE: errata sheets

1

Thank you.  It will bring you much delight, I am sure.

-----Original Message-----
From: Daniel Young [mailto:dyoung@wrkk.com]
Sent: Tuesday, December 17, 2002 2:32 PM
To: Sullivan, Randy
Subject: RE: errata sheets


Fine with me.  I received your motion for reconsideration, but haven't had time to read it
yet.  I can't wait!!




>       Daniel M. Young, Esq.
>       Wofsey, Rosen, Kweskin & Kuriansky, LLP
>       600 Summer Street
>       Stamford, CT 06901
>       203-327-2300
>       203-967-9273 (fax)
>
>
>       *****************************************
>
>       This communication and any documents attached or other information
>       transmitted contains confidential information which is intended only
>       for the use of the addressee.  It may also contain information that
is
>       protected by the Attorney-client privilege or the work product
>       doctrine.  Any review, retransmission, dissemination, copying, or
other
>       use of, or taking of any action in reliance upon, this information
by
>       persons or entities other than the intended recipient or
distribution of
>       this communication by persons other than the addressee is
prohibited.
>       If you have received this communication in error, please delete the
>       material from any computer, and notify the sender immediately by
>       returning the original message to the sender.
>


-----Original Message-----
From: Sullivan, Randy [mailto:rsullivan@hunton.com]
Sent: Tuesday, December 17, 2002 2:28 PM
To: Daniel Young
Subject: RE: errata sheets


Friday the 20th is fine if that's OK with you.

-----Original Message-----
From: Daniel Young [mailto:dyoung@wrkk.com]
Sent: Tuesday, December 17, 2002 2:29 PM
To: Sullivan, Randy
Subject: RE: errata sheets


When do you want until?  Friday?

>    Daniel M. Young, Esq.
>    Wofsey, Rosen, Kweskin & Kuriansky, LLP
>    600 Summer Street
>    Stamford, CT 06901
>    203-327-2300
>    203-967-9273 (fax)
>
>
>    *************************************
>
>    This communication and any documents attached or other information
>    transmitted contains confidential information which is intended only
>
>    for the use of the addressee.  It may also contain information that
is
>    protected by the Attorney-client privilege or the work product
>    doctrine.  Any review, retransmission, dissemination, copying, or
other
>    use of, or taking of any action in reliance upon, this information
by
>    persons or entities other than the intended recipient or
distribution of
>    this communication by persons other than the addressee is
prohibited.
>    If you have received this communication in error, please delete the
>    material from any computer, and notify the sender immediately by
>    returning the original message to the sender.
>


-----Original Message-----
From: Sullivan, Randy [mailto:rsullivan@hunton.com]
Sent: Tuesday, December 17, 2002 2:25 PM
To: Daniel Young
Subject: RE: errata sheets


Dan --

    Don't know where you guys stand on Mr. Henwood's errata sheet, but do you have any
objection to a short extension on the due date (since we already extended it to the 18th).
We have some corrections to Jim's transcript.  I am trying to coordinate with Jim on
getting his signature and have found that he is traveling through Wednesday.

    Thanks.

-----Original Message-----
From: Daniel Young [mailto:dyoung@wrkk.com]
Sent: Monday, November 25, 2002 11:43 AM
To: Sullivan, Randy
Subject: RE: errata sheets


Hopefully, before the 18th, Mr. Henwood will have completed his review.  So, lets say the
18th for both sides.

I just got Judge Martinez's decision extending discovery late last week, but I didn't get
anything else yet.  We should speak about agreeing upon the discovery items that Judge
Martinez is telling us to "try harder" on.  Are you around tomorrow?  I'm off on Wednesday.

- Dan


>    Daniel M. Young, Esq.
>    Wofsey, Rosen, Kweskin & Kuriansky, LLP

```
>     600 Summer Street
>     Stamford, CT 06901
>     203-327-2300
>     203-967-9273 (fax)
>
>
>          **************************************
>
>     This communication and any documents attached or other information
>     transmitted contains confidential information which is intended only

>     for the use of the addressee.  It may also contain information that
is
>     protected by the Attorney-client privilege or the work product
>     doctrine.  Any review, retransmission, dissemination, copying, or
other
>     use of, or taking of any action in reliance upon, this information
by
>     persons or entities other than the intended recipient or
distribution of
>     this communication by persons other than the addressee is
prohibited.
>     If you have received this communication in error, please delete the
>     material from any computer, and notify the sender immediately by
>     returning the original message to the sender.
>
```

-----Original Message-----
From: Sullivan, Randy [mailto:rsullivan@hunton.com]
Sent: Monday, November 25, 2002 11:04 AM
To: Daniel Young
Subject: RE: errata sheets


I am fine with extending the errata sheet deadline.  Actually, I am scheduled to be traveling the week of Dec. 9-13.  Can we extend the deadline two weeks to Dec. 18?  Obviously, we don't have to wait until then, but that way at least I will be around the office.

By the way, I received Judge Martinez's order on the discovery extension, but have not seen an order on the motion to compel.  Have you gotten anything on that yet?

Thanks.

-----Original Message-----
From: Daniel Young [mailto:dyoung@wrkk.com]
Sent: Monday, November 25, 2002 8:46 AM
To: Randy Sullivan (E-mail)
Subject: errata sheets


Our agreement for Henwood's and O'Toole's errata sheets has tnem due by Wednesday, December 4th.  My client still has not completed his review of his deposition transcript.  Could we extend that date by a week so I don't have to insist that Mr. Henwood review his transcript over the next few days, while his family is in for Thanksgiving?

Thanks,
Dan


```
>     Daniel M. Young, Esq.
>     Wofsey, Rosen, Kweskin & Kuriansky, LLP
>     600 Summer Street
>     Stamford, CT 06901
```

4

```
>      203-327-2300
>      203-967-9273 (fax)
>
>
>           ****************************************
>
>
>      This communication and any documents attached or other information
>      transmitted contains confidential information which is intended only

>      for the use of the addressee.  It may also contain information that
is
>      protected by the Attorney-client privilege or the work product
>      doctrine.  Any review, retransmission, dissemination, copying, or
other
>      use of, or taking of any action in reliance upon, this information
by
>      persons or entities other than the intended recipient or
distribution of
>      this communication by persons other than the addressee is
prohibited.
>      If you have received this communication in error, please delete the
>      material from any computer, and notify the sender immediately by
>      returning the original message to the sender.
>
>
```