UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------
DAVID D. HENWOOD,                          :

    Plaintiff,                              :

                                      Civil Action No.
v.                                         :   3:01 CV 996 (AWT)

UNISOURCE WORLDWIDE, INC. and              :
GEORGIA-PACIFIC CORP.

    Defendants.                            :   July 1, 2004
---------------------------------------------------------------

## AMENDED COMPLAINT

THE PARTIES

    1.    The plaintiff David Henwood is a citizen and resident of the State of Connecticut, residing in Wilton, Connecticut. The plaintiff was born on September 9, 1935 and at all relevant times has been over the age of 40.

    2.    The defendant Georgia-Pacific Corporation ("Georgia-Pacific") is a company incorporated in and under the laws of the State of Georgia, with its principal place of business in the State of Georgia. Georgia Pacific is one of the largest producers of building products, pulp, and paper products in the world. It operates throughout the United States and in many foreign countries and has approximately 55,000 employees worldwide, with annual sales of approximately $20 billion.

    3.    The defendant Unisource Worldwide, Inc. ("Unisource"), currently a wholly owned subsidiary of Georgia-Pacific, is a company incorporated in and under the laws of the State of Delaware, with its principal place of business in the State of Georgia. Unisource is one of the leading distributors of printing and imaging papers, packaging systems, and maintenance

supplies in North America. It employs approximately 15,000 employees throughout the United States.

4. Both Georgia-Pacific and Unisource have been continuously engaged in an industry affecting commerce for many years.

JURISDICTION AND VENUE

5. The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(c)(1) in that there is a complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. With respect of the plaintiff's age discrimination claims, the subject matter jurisdiction of this Court also is invoked pursuant to the provisions of 29 U.S.C. § 626(b) and 28 U.S.C. § 1331.

7. The parties have stipulated that all parties are subject to the personal jurisdiction of this Court.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391 insofar as a substantial part of the events or omissions giving rise to the plaintiff's claims occurred within the District of Connecticut.

FIRST COUNT (Breach of Contract):

1-8. The plaintiff incorporates paragraphs 1-8 of his complaint as paragraphs 1-8 of the First Count, as if full set forth herein.

9. The plaintiff was employed by the defendants from 1985 until 2000 as a sales representative for commercial paper products.

10. This claim arises out of an employment agreement made in New York and Connecticut and to be performed in Connecticut and arises out of business conducted in this state, including orders pertaining to the production and distribution of commercial paper products valued in excess of $230 million since 1985.

11. The defendant Unisource has its northeast regional headquarters at 100 Helmsford Way, Windsor, CT 06905. Unisource is authorized to do business in Connecticut, has offices and facilities in this state, and has numerous employees in Connecticut. Upon information and belief, Unisource was merged into defendant Georgia-Pacific in or about June, 1999 and since that time has been operated as a wholly-owned subsidiary of Georgia-Pacific.

12. In Connecticut, Georgia-Pacific operates distribution facilities in Milford and Windsor. Its corporate headquarters are located at 133 Peachtree Street, Atlanta, Georgia 30303.

13. On or about February 13, 1985, defendant Unisource, through the division of Unisource known as Paper Corporation of the United States ("Paper Corporation"), hired the plaintiff as a commission sales representative. Paper Corporation, then as now, although denominated a corporation, was operated exclusively as a division and trade name by Unisource, which was then named Alco Standard Corporation. From 1985 onward, defendant Unisource operated Paper Corporation as a division, which was in the business of supplying specialty papers to publications and other commercial users of large quantities of paper products.

14. The parties agreed that the plaintiff would be paid initially on the basis of a specified weekly draw, but thereafter would be compensated on a commission basis. By letter dated February 13, 1985, Robert F. Fitzgerald, the President of the Paper Corporation division of Unisource, agreed that as a commission sales representative, the plaintiff would be compensated

at the rate of 45% of the gross profit margin generated from his sales, provided that the plaintiff would pay his own travel, entertainment, and telephone expenses.

15. In hiring the plaintiff, Mr. Fitzgerald represented to the plaintiff and assured him that the company would do everything in its power to support his relationship with Watchtower, the plaintiff's principal existing client, which he expected to bring with him when he began working in his new position. Watchtower is an organization responsible for printing the religious publications of the Jehovah's Witness faith, including Awake and Watchtower magazines. Prior to joining the defendant Unisource, the plaintiff had serviced the Watchtower account since 1977. Mr. Fitzgerald praised the plaintiff's performance in serving the Watchtower account over many years, and he told the plaintiff that he hoped the plaintiff continued to represent Watchtower as long as both men were alive.

16. The plaintiff believed and relied on those commitments and accepted the arrangements proposed by the company, and both parties operated pursuant to them, with minor modifications, for the ensuing 15 years.

17. In 1985, among the customers the plaintiff brought with him to the Unisource organization was Watchtower.

18. The Watchtower account was a valuable commercial relationship and from 1977 onward was the major focus of the plaintiff's career. The plaintiff's skills as a salesman were utilized in an effort to provide all of the requirements of the Watchtower organization, at the highest level of quality, and for the best competitive prices.

19. The plaintiff and defendant Unisource expressly and impliedly agreed that in consideration for the plaintiff's bringing the valuable Watchtower account to Unisource and

servicing that account diligently, Unisource would not interfere with the plaintiff's relationship with his customer or his right to receive commissions on all Watchtower sales.

20. While employed at Unisource, the plaintiff developed a new source of supply for the exacting paper requirements of Watchtower by establishing a relationship with Fraser Papers, Inc. ("Fraser") of Stamford, Connecticut. As a result of this relationship, Watchtower received paper designed specifically for its unique requirements, and Unisource, through Paper Corporation, acted as a broker which ordered paper and collected revenues based upon deliveries from the paper mill.

21. The plaintiff's efforts as the Watchtower sales representative for defendant Unisource extended to scrutinizing and participating in every phase of the ordering, production and delivery process, including in-house ink manufacturing, bindery, inventory management, shipping, packing, and labeling operations.

22. As a result of these efforts by the plaintiff, the Watchtower relationship flourished, to the extent that it generated thousands of tons of paper sales for defendant Unisource annually and earned gross profits for Unisource's Paper Corporation division in excess of $2 million per year. Also as a result of these efforts, the plaintiff became the highest earning sales representative for the company for 14 years in succession, and the plaintiff's customer Watchtower was one of the most profitable single customers for the entire Unisource organization.

23. From 1985 until some time during 1999, defendant Unisource honored its express and implied obligations to support plaintiff's relationship with Watchtower and to pay the plaintiff the agree-upon commission on all Watchtower sales.

24. At or about the time of the merger in 1999 between the defendants, one or both of the defendants developed a plan, unknown to the plaintiff, to deprive the plaintiff of the lucrative Watchtower account and to retain its earnings exclusively. Prior to that time, upon information and belief, Unisource had never unilaterally appropriated a customer account brought to Unisource by a commission sales representative for the purposes of depriving that sales representative of his commission.

25. As part of that plan, defendant Unisource failed and refused to notify the plaintiff of a written inquiry received from Watchtower in March, 1999 regarding the pricing of the two principal varieties of paper purchased by Watchtower from Unisource. In the ordinary course of business, this type of inquiry should have been delivered by Unisource to the plaintiff immediately, because the plaintiff was the only sales representative familiar with the Watchtower sales program and because Watchtower was accustomed to immediate responsiveness from the plaintiff. Nevertheless, defendant Unisource withheld the Watchtower correspondence from the plaintiff until November 1999, by which time his 22-year relationship with Watchtower had been placed in jeopardy.

26. In November 1999, the defendants notified the plaintiff that Unisource was unilaterally taking over the Watchtower account, and that from that time onward, the plaintiff was forbidden to have any direct communication with his long-time customer and client, Watchtower. The defendants took these unprecedented and arbitrary actions even though the plaintiff was the most knowledgeable and best qualified sales representative in the Georgia-Pacific organization to handle the Watchtower account, and even though all of the revenues generated by this account were attributable to the plaintiff's expertise and efforts. In taking this

unilateral step, the defendants intended to divert all of the Watchtower revenues to themselves and to deprive the plaintiff of his agreed-upon commissions on Watchtower's sales.

27. In January 2000, the defendants notified the plaintiff that they had designated James O'Toole, a young sales executive at Unisource, to be solely responsible for the Watchtower account. At the time, Mr. O'Toole's title was president of Websource division of Unisource, and shortly thereafter, Paper Corporation was made a division of Websource. Websource had previous experience selling other paper products to Watchtower, but it had lost most of this business in 1998 to the plaintiff, who was then his competitor.

28. On January 25, 2000, the plaintiff went to a scheduled meeting with Mr. O'Toole at his office in New York City to discuss the plaintiff's future relationship with the defendants and with the Watchtower account. Mr. O'Toole failed to attend the meeting, claiming that the weather was too inclement, but about an hour after the scheduled meeting was to have commenced, he telephoned the plaintiff from his home. In their conversation, Mr. O'Toole told the plaintiff that neither Unisource nor he personally found any fault with the plaintiff's handling of the Watchtower account, and that the problems in their relationship between Unisource and Watchtower were caused by the incompetence of others. As the person at Unisource now responsible for the Watchtower relationship, he requested that the plaintiff meet with him to assist in repairing the Watchtower relationship.

29. Because of his familiarity with the Watchtower organization and its paper needs, the plaintiff was in a position to provide material assistance to the defendants in restoring the Watchtower relationship. The plaintiff offered to do so in exchange for a resumption of his commission relationship. In March 2000, Mr. O'Toole wrote to the plaintiff offering him an

interim compensation plan, to begin in April 2000, whereby the plaintiff would be paid $7,500 per month for six months beginning in April 2000, and once the gross margin of the Watchtower account was returned to the 3-4% level, the plaintiff would be restored to his commission relationship at his regular rate. These commitments were made to the plaintiff even though, as a formal matter, the defendants had not returned the account to the plaintiff's control. The plaintiff agreed to cooperate with these arrangements in an effort to have the defendants pay him the sales commissions to which he was entitled.

30. Thereafter, notwithstanding the plaintiff's good faith efforts on behalf of the defendants, in September 2000, the defendants informed the plaintiff that they would make no further payments to him.

31. From December 1999 onward, in breach of their obligations to the plaintiff, the defendants have failed, refused, and neglected to pay the plaintiff any commissions on sales to the Watchtower, despite the fact that the Watchtower organization renewed orders for paper supplies from the defendants based upon previous orders negotiated and obtained by the plaintiff. The defendants also have refused to pay commissions to the plaintiff on orders, amounting to thousands of tons of paper, that were obtained, without any material activity on the part of the defendants, because of the plaintiff's prior sales efforts. Upon information and belief, those sales have resulted in gross earnings to the defendants substantially in excess of $500,000. In addition, the defendants failed to complete the monthly $7,500 payments as per the agreement between the parties.

32. The defendants refused to permit the plaintiff to solicit any accounts other than the Watchtower from December 1999 onward, and the termination of compensation to the plaintiff

in September 2000 constructively terminated the plaintiff's employment.

33. In or about June 2000, the defendants entered into an agreement with Fraser for a specified commission on sales it made directly to the Watchtower as to which the defendants and the plaintiff had a claim. Upon information and belief, the total value of commissions under this agreement exceeds $750,000.

34. The defendants have failed and refused to pay the plaintiff any portion of the commissions on this arrangement, in breach of the plaintiff's express and implied contract.

35. The defendants have continued to sell paper products to the Watchtower organization and, upon information and belief, will continue to do so in the future, but the defendants have failed and refused to pay the plaintiff any of the commissions owed to him on account of such sales.

36. The plaintiff has sustained large direct and consequential economic losses as a result of the breach by the defendants of their obligations to him.

SECOND COUNT (Breach of Duty of Good Faith and Fair Dealing):

1-36. The plaintiff incorporates paragraphs 1-36 of the First Count as paragraphs 1-36 of the Second Count, as if full set forth herein.

37. In connection with their ongoing relationship with plaintiff, the defendants owed the plaintiff a duty of good faith and fair dealing including the duties not interfere with his relationship with the Watchtower organization and not acting to deprive the plaintiff of commissions that he had earned or would earn premised upon work he already had performed.

38. In December 1999 and thereafter, the Watchtower organization renewed orders

for paper supplies from the defendants based upon previous orders negotiated and obtained by the plaintiff. These orders, amounting to thousands of tons of paper, were obtained without any material activity on the part of the defendants, because they benefitted from the sales effort previously made by the plaintiff.

      39.    The defendants have breached their duty of good faith and fair dealing by refusing to pay to the plaintiff his commission on sales from December 1999 onward, which commissions are continuing and will continue into the future.

THIRD COUNT (Unjust Enrichment):

      1-39.    The plaintiff incorporates paragraphs 1-39 of the Second Count as paragraphs 1-39 of the Third Count, as if full set forth herein.

      40.    Even if the plaintiff and the defendant did not have an express contract covering purchases of paper products by the Watchtower organization from December 1999 onward, the defendants have a duty to compensate the plaintiff for the revenues they derived based upon his efforts and at his expense.

      41.    The plaintiff conferred extensive benefits upon the defendants as a result of his ingenuity and sales efforts with the Watchtower organization. The defendants have benefitted from these efforts in numerous respects, including, but not limited to the following:

      (a)    The plaintiff introduced the Watchtower to the defendants and maintained the business relationship with that organization for more than 14 years.

      (b)    The plaintiff identified the technology and type of paper that would meet the exacting requirements of the Watchtower organization.

  (c) The plaintiff located the source of supply adequate to meet the customer's needs, and negotiated purchases of paper in the required amounts to meet the customer's budgetary goals.

  (d) the plaintiff supervised the entire relationship for years, including modifications of the product, and the labeling, shipping, and other elements of the supply relationship so as to create a unique product desired by the customer.

  (e) The plaintiff solicited orders from the customer prospectively to meet anticipated needs, and he established a program for purchases that incorporated renewal orders throughout the calendar year.

  (f) Without the services rendered by the plaintiff, the defendants would not have been able to sell any paper goods to the Watchtower organization.

  42. The defendants have profited as a result of the plaintiff's efforts, but have failed and refused to pay him for the reasonable value of the services rendered by him.

  43. The defendants have been unjustly enriched by their refusal to pay the plaintiff appropriate compensation for his services, from which they have benefitted from December 1999 to this date, and from which they will benefit in the future, all to the plaintiff's economic loss.

FOURTH COUNT (Accounting):

  1-43. The plaintiff incorporates paragraphs 1-43 of the Third Count as paragraphs 1-43 of the Fourth Count, as if full set forth herein.

  44. A fiduciary relationship existed between the defendants and the plaintiffs.

  45. Despite demand, the defendants have refused to provide an accounting of all

revenues derived from or on account of sales by the defendants to the Watchtower organization from April 2000 to the present.

46. The plaintiff is entitled to an accounting, to be performed pursuant to Conn. Gen. Stat. § 52-401 *et seq*, so as to determine the commissions owed to him.

FIFTH COUNT (Violation of Wage Statutes):

1-46. The plaintiff incorporates paragraphs 1-46 of the Fourth Count as paragraphs 1-46 of the Fifth Count, as if full set forth herein.

47. The defendants have failed and refused to pay the plaintiff for the compensation due him, as required by Conn. Gen. Stat. §§ 31-71c and 31-71e, and they have appropriated the commissions due for themselves in bad faith.

48. The plaintiff has incurred and will incur costs and reasonable attorneys' fees in connection with this action to recover the sums unlawfully withheld from him by the defendants.

SIXTH COUNT (Age Discrimination):

1-48. The plaintiff incorporates paragraphs 1-48 of the Fifth Count as paragraphs 1-48 of the Sixth Count, as if full set forth herein.

49. At some point unknown to the plaintiff in 1999, the senior management of Unisource made a decision, based upon the plaintiff's age (then approaching 64), to interfere with his business relationship with Watchtower and to turn the account over to a younger, less qualified company representative, James O'Toole (who was approximately 36 years old). In pursuing such efforts as a part of its discriminatory strategy, Unisource kept the plaintiff ignorant

of information vital to his handling of the Watchtower account.

50. Upon information and belief, the plaintiff was excluded from numerous Unisource-Watchtower-Fraser communications, despite the fact that he had a 22-year relationship with the client all because, premised on the plaintiff's age, the defendants wished to replace the plaintiff with a younger, less qualified individual.

51. The plaintiff was qualified to perform all of his job duties and, even when finally admitting to the plaintiff that he was being removed from the Watchtower account, the defendants asserted that the plaintiff had serviced the account well and that his removal was not related to his job performance.

52. In January, 1999, Daniel Romaneaux, the then president of Paper Corp., informed the plaintiff that he understood Unisource had decided to take away the Watchtower account and run it as a house account under Mr. O'Toole's supervision. Mr. Romaneaux told the plaintiff that the company wanted to pay the plaintiff no further compensation, but that Mr. Romaneaux, had intervened on the plaintiff's behalf so that at least the plaintiff's health benefits would be covered until he reached age 65 and retired in September, 2000. At that time, the plaintiff had no plans to retire and, to the contrary, had planned to continue working for Unisource indefinitely. Mr. Romaneaux made it clear to the plaintiff, however, that the company was tying both the plaintiff's continued compensation and his right to continue working to his age.

53. Because of the plaintiff's age, from January 2000 onward, Mr. O'Toole directed the plaintiff not to solicit any new accounts without prior authorization. Mr. O'Toole repeatedly told the plaintiff that he was developing a list of leads that the plaintiff would be permitted to pursue, but over a period of eight months, he never authorized the plaintiff to contact even a

single potential customer. This tactic foreclosed the plaintiff from developing any new clientele or any new commissions, all based upon his age. As a result, when Unisource told the plaintiff his commissions and draw were terminated, the plaintiff was left with no employment income at all.

54. At the time of the discriminatory actions described above, the plaintiff was by far the oldest sales representative of Paper Corporation. The next oldest sales representative was approximately 9 years junior to the plaintiff.

55. The defendants have discriminated against the plaintiff in the terms and conditions of his employment by involuntarily removing his work responsibilities notwithstanding his exemplary performance, by refusing to pay him commissions that he had earned, by eliminating his compensation, and by constructively terminating him from employment, all based upon his age.

56. The foregoing actions constitute a violation of the plaintiff's right to be free from age discrimination pursuant to the Connecticut Fair Employment Practices Act, C.G.S. § 46a-60(a)(1) and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

57. The discrimination against the plaintiff was wilful, intentional, and deliberate, all in violation of 29 U.S.C. § 626.

58. The plaintiff timely filed a charge of age discrimination with the Connecticut Commissions on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission. On September 18, 2001, the CHRO issued a Release of Jurisdiction.

SEVENTH COUNT (Promissory Estoppel):

1-58.    The plaintiff incorporates paragraphs 1-58 of the Sixth Count as paragraphs 1-58 of the Seventh Count, as if full set forth herein.

59.    The defendants reasonably should have expected that their clear and definite promises with regard to (a) support for the plaintiff's exclusive relationship with the Watchtower, as well as (b) not interfering with the plaintiff's relationship with the Watchtower or his Watchtower commissions as alleged above in paragraphs 14, 15, and 19, would have induced the plaintiff to take action or forbear from taking actions.

60.    In detrimental reliance on the defendants' promises, the plaintiff accepted employment with PCUS and brought the Watchtower account to PCUS instead of pursuing other employment options available to him.  In further reliance on the defendants' promises, the plaintiff also elected to remain employed by the defendants instead of pursuing other employment opportunities and taking the Watchtower account with him to another employer thereafter.

61.    If the defendants had not made their promises, the plaintiff could have and would have pursued and accepted alternate employment and taken the Watchtower account with him to another employer.  Alternatively, he could and would have taken other defensive actions to avoid the sabotage of his beneficial relationship with the Watchtower in 1999.

62.    The defendants' violations of their promises have caused the plaintiff to suffer damages, including but not limited to loss of the beneficial Watchtower relationship; loss of income, including commissions; and loss of employment.

63.    Injustice can be avoided only by enforcement of the defendants' promises.

WHEREFORE, the plaintiff requests that this Court award him the following relief:

1. Compensatory Damages, including but not limited to:

    (a) unpaid commissions that he has earned;
    (b) unpaid promised compensation;
    (c) commissions that he would have earned in the future, but for the defendants' unlawful conduct; and
    (d) reimbursement for any tax consequences resulting to the plaintiff as a result of receiving a lump sum award;

2. Liquidated damages pursuant to 29 U.S.C. § 626;

3. Double damages pursuant to Conn. Gen. Stat. § 31-72

4. Attorney's fees pursuant to 29 U.S.C. § 626 and the Conn. Gen. Stat. § 31-72;

5. An accounting;

6. Costs and interest;

7. Such other and further relief in equity or law as this Court deems necessary and proper.

          THE PLAINTIFF,
          DAVID D. HENWOOD

          By _____/s/_____
            David M. Cohen, Esq. (ct06047)
            Daniel M. Young (ct17188)
           WOFSEY, ROSEN, KWESKIN &
              KURIANSKY, LLP
           600 Summer Street
           Stamford, CT 06902
           (203) 327-2300

The plaintiff demands a trial by jury.

          _____/s/_____
              Daniel M. Young